1
2
3
4                          UNITED STATES DISTRICT COURT
5                        NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| 7  R.P., | Case No.  24-cv-00522-LJC |
| 8                Plaintiff, | |
| 9       v. | **ORDER REGARDING MOTION TO DISMISS SECOND AMENDED COMPLAINT AND REQUEST FOR JUDICIAL NOTICE** |
| 10  CITY AND COUNTY OF SAN FRANCISCO, et al., | |
| 11                Defendants. | Re: Dkt. Nos. 69, 70, 73 |

12

## I.     INTRODUCTION

13

14         Plaintiff R.P., who was a minor during the events at issue, brings this case against

15  Defendants the City of San Francisco (the City), San Francisco Police Chief William Scott, and

16  police officers Thomas Harvey, Matt (erroneously sued as Matthew) Sullivan, Nelson Wong, and

17  John Solomon.   R.P. asserts state and federal claims for excessive force, false arrest, and related

18  theories arising from an alleged mass arrest at the Dolores Hill Bomb, an unsanctioned

19  skateboarding event in July of 2023.

20         Defendants move to dismiss R.P.'s Second Amended Complaint under Rule 12(b)(6) of

21  the Federal Rules of Civil Procedure.  The Court found the matter suitable for resolution without

22  oral argument and vacated the hearing previously set for February 5, 2025.  *See* Civ. L.R. 7-1(b).

23  For the reasons discussed below, and having considered the parties' papers, Defendants' Motion to

24  Dismiss is DENIED.  Defendants' Request for Judicial Notice is also DENIED, and their related

25  Administrative Motion to File Under Seal is DENIED AS MOOT.[1]

26
27  _____

28  [1] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

## II.    BACKGROUND

### A.    Procedural History

R.P. filed this action on January 26, 2024.  *See* ECF No. 1.  His mother Thida Pernia was later appointed guardian ad litem.  ECF Nos. 28, 29.  The Court found the case related to *J.T. v. City & County of San Francisco*, No. 23-cv-06524-LJC (N.D. Cal.), a putative class action brought by other minors who were detained by the Dolores Hill Bomb.  ECF No. 11.

R.P. amended his Complaint on March 1, 2024, in response to Defendants' stated intent to bring a motion to dismiss.  *See* ECF Nos. 15, 16, 18.  Defendants moved to dismiss R.P.'s First Amended Complaint on multiple grounds, including that R.P. had asserted federal claims only against unidentified and unserved "Doe Defendant" police officers, and therefore should not be permitted to "bootstrap" state law claims against the City into federal court.  *See* ECF No. 25 at 21.  The Court allowed R.P. to take discovery regarding the Doe Defendants' identities, set a deadline of July 29, 2024 for R.P. to name and serve those defendants, and in the interim, declined to address the viability of his "state law claims against the City . . . that might ultimately fall outside this Court's subject matter jurisdiction."  ECF No. 35 at 5–6.  The parties later stipulated to extend that time to October 29, 2024, and in light of the anticipated amendment to the First Amended Complaint, the Court denied the Motion to Dismiss the First Amended Complaint without prejudice to the City renewing it if R.P. failed to amend by the new deadline.  ECF Nos. 41, 42.

In the meantime, the Court granted in part and denied in part a motion to dismiss the related *J.T.* case.  *See generally J.T. v. City & County of San Francisco*, No. 23-cv-06524-LJC, 2024 WL 3012791 (N.D. Cal. June 13, 2024).  That Order generally allowed claims to proceed on some of the same theories R.P. asserts here—arrest without probable cause in violation of the Fourth Amendment, violation of the Bane Act, and common law false arrest and negligence— while dismissing theories of liability that R.P. does not assert, including discrimination claims, a First Amendment retaliation claim, and liability against the City under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

At a case management conference on October 3, 2024, the parties indicated that

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Defendants were still in the process of producing video from police officers' body-worn cameras,

2    and R.P. stated that he might not be able to identify all of the officers involved in his arrest by the

3    October 29 deadline to amend.  *See* ECF No. 54.  The Court directed R.P. to amend his complaint

4    by the deadline and name any defendants he could.  *Id.*  The Court stated that if R.P. identified

5    additional defendants through subsequently produced video footage, the parties should meet and

6    confer, and R.P. could move for leave to amend if the parties were unable to reach a stipulation.

7    *Id.*

8         R.P. filed his operative Second Amended Complaint on the October 29, 2024 deadline.

9    *See generally* 2d Am. Compl. (SAC, ECF No. 57).  Defendants thereafter brought the present

10   Motion to Dismiss.  ECF No. 69.

11        As of a case management conference on January 21, 2025, well after briefing on the

12   present Motion was completed, Defendants were still in the process of producing video footage.

13   The Court ordered Defendants to complete production by January 31, 2025.  *See J.T.*, No. 23-cv-

14   06524-LJC, ECF Nos. 143, 144.

15        The Court vacated the hearing set for February 5, 2025, due in part to illness.  *See* ECF No.

16   93.  The Court finds the issues raised in the Motion suitable for resolution without oral argument,

17   as discussed below.  *See* Civ. L.R. 7-1(b).

18        **B.    Allegations of the Second Amended Complaint**

19        Because a plaintiff's factual allegations are generally taken as true in resolving a motion to

20   dismiss under Rule 12(b)(6), this section summarizes the allegations of the Second Amended

21   Complaint as if true.  Nothing in this Order should be construed as resolving any question of fact

22   that might be disputed.

23        R.P. was fifteen years old in the summer of 2023.  SAC ¶ 1.  Around 8:00 PM on July 8,

24   2023, on his way home from a birthday party, R.P. went to Dolores Park in San Francisco the

25   hope of observing the Dolores Hill Bomb, an unsanctioned annual skateboarding event.  *Id.* ¶¶ 1,

26   19.  When he arrived, he determined that the event had ended, and attempted to go home.  *Id.* ¶¶ 2,

27   19–20.  R.P. followed police officers' instructions for a route to leave, but police officers arrested

28   him along with "everyone else on the street," in what R.P. characterizes as "kettling."  *Id.* ¶¶ 20–

3

21.

Officers detained R.P. outside on the street for more than seven hours in cold weather, without opportunity to drink water, use the bathroom, or speak to his parents. *Id.* ¶ 22. Officers did not let R.P. wear his beanie hat. *Id.* ¶ 22.

Defendant Wong handcuffed R.P. using zip ties, which caused pain and discomfort. *Id.* ¶ 23. R.P. asked Defendant Solomon and at least two other as-yet-unidentified officers to loosen the restraints, but they declined to do so, even after R.P. told Solomon that he could not feel his hand. *Id.* ¶ 24. R.P. remained handcuffed for hours, and Defendants never loosened the handcuffs in response to his complaints. *Id.* ¶¶ 23–24.

R.P. alleges on information and belief that the mass arrest "was done at the direction and/or command of Defendant Thomas Harvey, a captain for the SFPD, and Defendant Matthew Sullivan, a lieutenant for the SFPD," without probable cause to arrest or sufficient time and opportunity for bystanders to disperse. *Id.* ¶ 26. R.P. alleges on information and belief that Defendant Scott delegated responsibility to oversee the police response to Harvey and Sullivan, "kept tabs on the SFPD's response to the event throughout the incident," and approved the decision to order a mass arrest. *Id.* ¶¶ 27–28.

R.P. asserts the following claims for relief: (1) excessive force under 42 U.S.C. § 1983 against Defendants Wong, Solomon, and Does 1–50, SAC ¶¶ 34–36; (2) false arrest in violation of the Fourth Amendment, under § 1983, against Defendants Wong, Scott, Harvey, Sullivan, and Does 1–50, SAC ¶¶ 37–40; (3) "Supervisor Liability" against Defendants Scott, Harvey, Sullivan, and Does 1–50 ("includ[ing] supervisors and/or high-ranging decisionmakers within" the City), SAC ¶¶ 41–44; (4) violation of the Bane Act, codified at section 52.1 of the California Civil Code, against Defendants the City, Scott, Harvey, Sullivan, Solomon, and Does 1–50, SAC ¶¶ 45–52; (5) battery, in violation of California Penal Code § 242, against Defendants the City, Wong, Solomon, and Does 1–50, SAC ¶¶ 53–56; (6) negligence, against all Defendants, SAC ¶¶ 57–63; and (7) false imprisonment and arrest, against Defendants the City, Scott, Harvey, Sullivan, Wong, and Does 1–50, SAC ¶¶ 64–67.

United States District Court
Northern District of California

United States District Court
Northern District of California

## III.    ANALYSIS

### A.    Request for Judicial Notice

Defendants request judicial notice of four video clips from police officers' body-worn cameras that, according to Defendants, depict officers applying zip tire handcuffs to R.P. and checking the tightness of those handcuffs. *See generally* ECF No. 70. Although a court's review of a motion to dismiss under Rule 12(b)(6) is generally limited to the facts alleged in the complaint, courts may also consider materials properly subject to judicial notice and materials incorporated by reference in the complaint. Defendants assert two grounds for the Court to consider the videos they offer here: (1) that R.P.'s Complaint incorporates the videos by reference; and (2) that the videos are subject to judicial notice as public records not reasonably subject to dispute. ECF No. 70. R.P. opposes judicial notice. *See generally* ECF No. 82.

#### 1.    Incorporation by Reference

The doctrine of incorporation by reference "treats certain documents as though they are part of the complaint itself . . . 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)).[2]

Defendants are correct that R.P.'s Second Amended Complaint notes the existence of potentially relevant video footage. The only reference to such a video is as follows:

> . . . Plaintiff twice told Defendant Solomon "I can't feel my hand" as a result of the overly tight handcuffs. In response, Defendant Solomon said "that pass is alright" in apparent response to Plaintiff's complaints of the overly tight handcuffs and did not loosen or otherwise adjust the handcuffs. *This encounter was captured on body-worn camera.*

SAC ¶ 24 (emphasis added).

The Ninth Circuit "has held that 'the mere mention of the existence of a document is insufficient to incorporate the contents of a document.'" *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 2031, 1038 (9th Cir. 2010)). R.P.'s allegations only mention the

---

[2] *Khoja* erroneously cites this quotation as appearing on page 907 of the decision in *Ritchie*.

1    existence of body-worn camera footage, and only in a single instance.  That is insufficient to

2    establish incorporation by reference under the "refers extensively" test.

3            The alternative method of incorporation by reference, where "the document forms the basis

4    of the plaintiff's claim," *see id.*, is also inapplicable.  That doctrine "may apply, for example, when

5    a plaintiff's claim about insurance coverage is based on the contents of a coverage plan, . . . or

6    when a plaintiff's claim about stock fraud is based on the contents of SEC filings," *Ritchie*, 342

7    F.3d at 908, or when a defamation claim necessarily rests on the allegedly defamatory photographs

8    and caption and the context in which those materials appeared, *Khoja*, 899 F.3d at 1002

9    (discussing *Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005)).  In all of those contexts, the material

10   at issue—at least as alleged—itself gives rise to the claim.

11           Here, although the video footage might provide *evidence* to support or undermine R.P.'s

12   excessive force claim, it is not integral to that claim in the same sense as the materials courts have

13   found to be incorporated by reference.  R.P.'s claim rests on the conduct that actually occurred,

14   not the video that captured it.  "A complaint does not necessarily rely on every piece of evidence

15   that depicts the events forming the basis of the claims in the complaint." *Est. of Smith ex rel.*

16   *Smith v. City of San Diego*, No. 16-cv-2989-WQH-MDD, 2018 WL 3706842, at *3 (S.D. Cal.

17   Aug. 3, 2018).

18           As R.P. notes, many courts have declined to treat video footage of events alleged in a

19   complaint as incorporated by reference.  *See id.*; *Greenstone v. Las Vegas Metro. Police Dep't*,

20   No. 2:23-cv-00290-GMN-NJK, 2024 WL 385213, at *4 (D. Nev. Jan. 31, 2024) *Anniskiewicz v.*

21   *City of Rochester*, No. 20-cv-6629-FPG, 2021 WL 1699731, at *3 (W.D.N.Y. Apr. 29, 2021);

22   *Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 325 (E.D. Tex. 2021); *Lee v. City of San*

23   *Diego*, No. 18cv0159 W (BLM), 2019 WL 117775, at *4–5 (S.D. Cal. Jan. 7, 2019).

24           Although Defendants cite no case treating body-worn camera video as incorporated by

25   reference in a complaint, the Court is aware that some district courts have done so, including two

26   decisions cited in the *Smith* case as counterexamples to that court's holding.  *See Covert v. City of*

27   *San Diego*, No. 15cv2097 AJB (WVG), 2017 WL 1094020, at *5 (S.D. Cal. Mar. 23, 2017);

28   *Lihosit v. Flam*, No. CV-15-01224-PHX-NVW, 2016 WL 2865870, at *3 (D. Ariz. May 17,

United States District Court
Northern District of California

6

2016).[3]  Those cases held, essentially, that because the circumstances of an arrest were relevant to a plaintiff's claims, those claims implicitly incorporated video of evidence of such circumstances. For the reasons discussed above, this Court respectfully disagrees with the reasoning of *Covert* and *Lihosit*, and declines to follow those decisions.

Under Ninth Circuit precedent, R.P.'s Second Amended Complaint does not incorporate by reference the body-worn camera video of his detention.  The Court does not reach R.P.'s additional argument that even if the videos could be considered incorporated by reference, the Court cannot use them to contradict R.P.'s allegations and weigh disputed facts.  *See* ECF No. 82 at 6–8.

### 2.    Judicial Notice of Public Records

"[A] court may take judicial notice of public records 'not to credit the truth of the allegations or facts set forth therein,' but only for the existence of such documents."  *Zaragoza-Rios v. City of Concord*, No. 18-cv-06803-JCS, 2019 WL 2247856, at *3 (N.D. Cal. May 24, 2019) (quoting *Acasio v. San Mateo County*, No. 14-cv-04689-JSC, 2015 WL 5568345, at *1 n.1 (N.D. Cal. Sept. 22, 2015)). For example, "when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'"  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quoting *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426–27 (3rd Cir. 1999)).

Defendants' request effectively asks the Court to take notice of the videos for the truth of matters depicted therein.  Hypothetically, if R.P. had brought a claim that Defendants failed to meet some obligation to capture or preserve body-worn camera video, the *existence* of such video would be relevant to that claim, and might be subject to judicial notice.  Here, though, the videos are relevant—if at all—to show what occurred at the Dolores Hill Bomb, or in other words, the truth of what they purport to depict.  Except in limited circumstances under the incorporation-by-

---

[3] *See also, e.g.*, *Saved Mag. v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020) (taking judicial notice of body camera video discussed in a complaint, in the absence of objection by the plaintiffs), *aff'd*, 19 F.4th 1193, 1196 n.1 (9th Cir. 2021) (noting that the issue was not raised on appeal)

United States District Court
Northern District of California

1   reference-doctrine (which is inapplicable for the reasons discussed above), judicial notice for that

2   purpose is improper.  Defendants cite no authority taking judicial notice of video footage under the

3   public records doctrine.  *See* generally ECF No. 70.

4                                              * * *

5          Defendants' request for judicial notice is DENIED.  The Court has not viewed the videos

6   Defendants submitted.  Defendants' motion to seal the videos (ECF No. 73) is DENIED AS

7   MOOT.  The videos shall remain under seal, but the Court deems them withdrawn and will not

8   consider them for any purpose.  *See* Civ. L.R. 79-5(g)(2).  Defendants may, of course, resubmit

9   some or all of these videos as part of an evidentiary record at a later stage of the case.

10      **B.     Motion to Dismiss**

11          **1.     Legal Standard**

12          A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

13  "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a

14  cognizable legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019)

15  (citation and internal quotation marks omitted).  A complaint generally must include a "short and

16  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

17          A court reviewing a 12(b)(6) motion must "accept all factual allegations in the complaint

18  as true and construe the pleadings in the light most favorable to the nonmoving party."  *Outdoor*

19  *Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  "Threadbare recitals

20  of the elements of a cause of action . . . do not suffice," however, and a court need not credit "legal

21  conclusions" or "mere conclusory statements."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79

22  (2009).  The allegations in the complaint "must be enough to raise a right to relief above the

23  speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint must

24  demonstrate "facial plausibility" by pleading "factual content that allows the court to draw the

25  reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

26  678.

27          A court's review under Rule 12(b)(6) is generally limited to the contents of a complaint,

28  with the exception of materials incorporated by reference in a complaint or materials subject to

United States District Court
Northern District of California

1    judicial notice.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

2          A court generally should not dismiss a complaint with prejudice under Rule 12(b)(6)

3    unless it is clear the complaint cannot be saved by any amendment.  *See United States v.*

4    *Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  "[L]eave to amend should be freely

5    granted 'when justice so requires.'"  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting

6    Fed. R. Civ. P. 15(a)).  Generally, leave to amend may be denied only if allowing the amendment

7    would unduly prejudice the defendant, cause undue delay, or be futile, or if the plaintiff has acted

8    in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

9                    **2.    Federal Claims**

10                       **a.    Excessive Force Under § 1983**

11          The Fourth Amendment prohibits the use of excessive force in making an arrest.  "In

12    assessing the objective reasonableness of a particular use of force, [courts] consider: (1) the

13    severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and

14    amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance

15    between the gravity of the intrusion on the individual and the government's need for that

16    intrusion."  *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (cleaned up).  The

17    government's "interest is assessed by considering three primary factors: (1) the severity of the

18    crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or

19    others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by

20    flight," as well as any other factors that might be appropriate under "the totality of the

21    circumstances."  *Id.* at 1257 (cleaned up).  "[W]hether the suspect posed an immediate threat to

22    the safety of the officers or others[] is the most important single element of the three specified

23    factors."  *Id.* at 1258 (cleaned up).

24          Claims under § 1983 implicate the doctrine of qualified immunity, which shields

25    "government officials performing discretionary functions. . . from liability for civil damages

26    insofar as their conduct does not violate clearly established statutory or constitutional rights of

27    which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

28          "A series of Ninth Circuit cases has held that tight handcuffing can constitute excessive

United States District Court
Northern District of California

9

United States District Court
Northern District of California

force." *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (citing *Palmer v. Sanderson,* 9 F.3d 1433 (9th Cir. 1993); *Hansen v. Black,* 885 F.2d 642 (9th Cir. 1989)). The viability of such claims has been "well-established" for many years. *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004). The Ninth Circuit has characterized tight handcuff claims as "usually fact-specific and . . . likely to turn on the credibility of the witnesses." *LaLonde*, 204 F.3d at 960; *see also Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011) ("Determining the reasonableness of an officer's actions is a highly fact-intensive task for which there are no per se rules."). When the facts asserted by a plaintiff leave it "difficult, if not impossible, to say that the only reasonable conclusion that the evidence permits is that the force used was reasonable," the claim should be decided by a jury. *LaLonde*, 204 F.3d at 960.

Both parties discuss the Ninth Circuit's unpublished decision in *Reyes v. City of Santa Ana*, 832 F. App'x 487 (9th Cir. 2020). R.P. relies on a rule statement from that decision: that for viable tight handcuff claims, "the plaintiff suffered more than nominal injuries from their handcuffs, or complained to police about tight handcuffs, only to have their requests for loosening ignored." *Id.* at 491; ECF No. 84 at 15. R.P. contends that he meets that standard because Defendants failed to loosen his handcuffs even after he alerted them that he was experiencing pain and numbness.

But as Defendants note, aspects of the *Reyes* decision also support their position. *See* ECF No. 69 at 15; ECF No. 87 at 6. That case stated that "[s]ummary judgment on a tight handcuffing Fourth Amendment excessive force claim is merited if a plaintiff does not seek medical help or offer supporting documentary evidence," and concluded the plaintiff's "little bruise" was not sufficient. *Reyes*, 832 F. App'x at 491 (citing *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 22 (9th Cir. 2001)). The court also noted, however, that when the plaintiff "protested that his handcuffs were tight and asked for loosening, [the officer] complied with this request." *Id.* Because the plaintiff "offer[ed] no other evidence," the Ninth Circuit affirmed summary judgment for the defense on the tight handcuffing claim. *Id.* The *Reyes* decision does not make clear whether the outcome would have differed if the officer refused the plaintiff's request to loosen his handcuffs—and in any event, it is an unpublished and non-precedential memorandum disposition.

1    The Ninth Circuit has also addressed tight handcuffing claims in a number of precedential

2    decisions. This Court is aware of only one such case (besides the unpublished *Reyes* decision) that

3    was decided in favor of the defense. In *Arpin v. Santa Clara Valley Transportation Agency*, the

4    Ninth Circuit affirmed summary judgment against a plaintiff who failed to substantiate her

5    purported injury from tight handcuffs with medical records or other evidence beyond conclusory

6    assertions. 261 F.3d at 921–22. In that case, though, the Ninth Circuit determined that the

7    plaintiff had resisted arrest, and took that resistance into account in determining that tight

8    handcuffing was reasonable under the circumstances. *Id.* There is also no indication that the

9    plaintiff complained to the officer about the tightness of her handcuffs or asked for them to be

10   loosened. *See id.* *Arpin* relied in the Eight Circuit's decision in *Foster v. Metropolitan Airports

11   Commission*, 914 F.2d 1076, 1082 (8th Cir. 1990), which it characterized as "determining

12   resistance justified use of force in handcuffing [a] suspect where force was not sufficient to create

13   evidence of injury." 261 F.3d at 922.

14   The Eighth Circuit has stated in *Foster* that it did "not believe that [the plaintiff's]

15   allegations of pain as a result of being handcuffed, without some evidence of more permanent

16   injury, are sufficient to support his claim of excessive force." 914 F.2d at 1082. But "[t]o the

17   extent *Foster* . . . is read to suggest that proof of physical injury is always required in order to

18   prove an excessive force claim, it is contrary to Ninth Circuit law which, in some circumstances,

19   permits an excessive force claim to proceed even where there has been no physical injury."

20   *Brown v. Villaraigosa*, No. CV 06-4169 SJO (JC), 2010 WL 11483802, at *14 n.20 (C.D. Cal.

21   Mar. 30, 2010) (citing *Espinosa v. City & County of San Francisco*, 598 F.3d 528, 537–38 (9th

22   Cir. 2010)), *recommendation adopted*, 2010 WL 11483803 (C.D. Cal. June 17, 2010). In

23   *Espinosa*, the Ninth Circuit affirmed a denial of summary judgment because there were questions

24   of fact as to whether officers used unreasonable force by merely pointing loaded guns at the

25   plaintiff. 598 F.3d at 537; *see also Fontana v. Haskin*, 262 F.3d 871, 880 (9th Cir. 2001) (quoting

26   with approval the Sixth Circuit's holding in *McDowell v. Rogers,* 863 F.2d 1302, 1307 (6th Cir.

27   1988), "that a serious or permanent injury is [not] a prerequisite to a claim under Section 1983").

28   Cases where the Ninth Circuit has ruled in favor of a plaintiff on a tight handcuff claim

11

have tended to involve greater degrees of force or more lasting injuries than R.P. has alleged here. The Court does not, however, understand those decisions as holding that some greater threshold of force or injury is required, at least at the pleading stage.

In *LaLonde v. County of Riverside*, police officers purportedly grabbed the plaintiff by his ponytail, knocked him to the ground, sprayed his face with pepper spray, and then left him handcuffed with the pepper spray burning his face, and refused to adjust the handcuffs in response to his complaints that the handcuffs were cutting off his circulation.  204 F.3d at 952.  The plaintiff's wrist and hand were still numb the next day, he sought medical attention, and he continued to experience occasional numbness as of the time the case went to trial.  *Id.* at 953.  In finding that the district court erred in granting judgment for the defense as a matter of law, however, the Ninth Circuit treated the issue of tight handcuffing as distinct from the prolonged exposure to pepper spray and other injuries, and held that the tight handcuff theory (among other theories) was sufficient to go to a jury.  *See id.* at 960.  Although *LaLonde* involved a somewhat more severe injury (ongoing numbness after the arrest, for which the plaintiff sought medical attention) from tight handcuffing than here, it did not indicate that a lasting injury was necessary to the claim, and its holding regarding the sufficiency of the tight handcuffing claim was distinct from the various other uses of force at issue like the use of pepper spray.

In *Wall v. County of Orange*, the relevant facts—viewed in the light most favorable to the plaintiff—included multiple uses of force by an arresting officer, culminating with applying "extremely tight" handcuffs, picking the plaintiff up by his handcuffed arms and throwing him into a patrol car, and leaving him handcuffed for more than twenty minutes, despite his requests to loosen the handcuffs.  364 F.3d at 1109–10.  A neurologist stated that the plaintiff injured a nerve as a result, and the plaintiff was unable to continue his work as a dentist.  *Id.* at 1110.  The Ninth Circuit held that, based on the plaintiff's "version of the facts, [the officer] used excessive force in making the arrest *and continuing the restraint by handcuffs* that hurt and damaged [the plaintiff's] wrist."  *Id.* at 1112 (emphasis added).  The court stated that the viability of tight-handcuff claims was "well-established," and noted precedent holding that the Fourth Amendment's rule against excessive force "prohibits more than the unnecessary strike of a nightstick, sting of a bullet, and

12

thud of a boot." *Id.* at 1112 (emphasis added; citation omitted).  Once again, the court did not indicate that the degree of injury was essential to the claim, instead merely stating that "[i]t is well-established that overly tight handcuffing can constitute excessive force." *Id.*

The facts of *Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993), perhaps come closest to this case, although it still involved a more lasting injury.  The plaintiff (Palmer) was a man in his sixties who had "recently suffered a stroke which had impaired his mobility." *Id.* at 1434.  A police officer (Sanderson) stopped him on suspicion of driving while intoxicated and administered field sobriety tests, which did not confirm intoxication. *Id.*  Palmer then walked back to his car to take shelter from stormy weather, telling Sanderson he would answer any further questions there. *Id.*  Palmer testified that Sanderson "jerked Palmer out of his car, pushed him against it, frisked him, handcuffed him, and pushed him into the back seat of the patrol car with such force that Palmer fell over sideways," and "that the handcuffs were tight enough to cause pain and discoloration to his wrists, and that Sanderson refused his request to loosen them." *Id.* at 1434–35.

The Ninth Circuit affirmed a denial of summary judgment, holding as follows:

> Defendants are not entitled to qualified immunity under the "reasonableness standard" of the Fourth Amendment. Palmer claims that Sanderson fastened Palmer's handcuffs so tightly around his wrist that they caused Palmer pain and left bruises that lasted for several weeks. Sanderson has presented no evidence that would justify handcuffing Palmer so tightly that he suffered pain and bruises, or to justify his refusal to loosen the handcuffs after Palmer complained of the pain. Under these circumstances, no reasonable officer could believe that the abusive application of handcuffs was constitutional. Because Palmer's evidence, if credited, would establish that Sanderson's use of force was excessive in violation of the Fourth Amendment, *see Hansen v. Black,* 885 F.2d 642, 645 (9th Cir. 1989) (unreasonably injuring a person's wrists while applying handcuffs constitutes use of excessive force), the district court properly refused to grant summary judgment in defendants' favor on this claim.

*Id.* at 1436; *see also Hansen*, 885 F.2d at 645 (reversing a district court's decision that had granted summary judgment for defendant officers, where the plaintiff visited a medical center for treatment of bruises and pain after being handcuffed, and a neighbor reported that officers treated the plaintiff roughly).

The Court declines to read *Arpin* or any other decision discussed above as requiring a

*United States District Court*
*Northern District of California*

plaintiff to allege lasting injury from overly tight handcuffs or medical treatment for such an injury. For one thing, *Arpin* specifically characterized the Eighth Circuit case on which it relied as addressing the appropriate use of force when a plaintiff resisted arrest, which R.P. has not alleged he did here. *See Arpin*, 261 F.3d at 922 (discussing *Foster*, 914 F.2d at 1082–83). For another, *Arpin* (and every other decision discussed above) was decided on a factual record, and did not address the pleading standard. Its requirement that a plaintiff provide *evidence* of significant injury to survive summary judgment is inapplicable at this stage of the case, even if it were not limited to cases where a plaintiff resisted arrest.

To the extent *Reyes* could be read as requiring medical treatment or other documentary evidence of injury in all tight handcuffing cases, even without a plaintiff having resisted arrest, it does so specifically in the context of summary judgment. *See* 832 F. App'x at 491 ("*Summary judgment* on a tight handcuffing Fourth Amendment excessive force claim is merited if a plaintiff does not seek medical help or offer supporting documentary evidence." (emphasis added)). That rule is in tension with *Reyes*'s statement that cases have allowed such claims to proceed where plaintiffs "suffered more than nominal injuries . . . *or* complained to police about tight handcuffs" that were not then loosened. *Id.* (emphasis added). The latter test is consistent with precedent from at least one other circuit, which relied in part on an earlier unpublished decision by the Ninth Circuit. *See Cugini v. City of New York*, 941 F.3d 604, 613, 616 n.10 (2d Cir. 2019) ("We conclude that where an officer's use of force in handcuffing is plainly unreasonable under the circumstances *or* where a plaintiff manifests clear signs of her distress—verbally or otherwise—a fact finder may decide that the officer reasonably should have known that his use of force was excessive for purposes of establishing a Fourth Amendment violation.") (citing *Liiv v. City of Coeur D'Alene*, 130 F. App'x 848, 852 (9th Cir. 2005)). Finally, *Reyes* is a non-precedential decision, and a rule that always required objective evidence of lasting injury would conflict with precedent allowing excessive force claims with no injury, *e.g.*, *Espinosa*, 598 F.3d at 537, and holding that "per se rules" are not appropriate for such claims, *Torres*, 648 F.3d at 1124.

Any ambiguity on the legal question of whether objective medical evidence of lasting injury might be required is not sufficient to establish qualified immunity, because (at least based

14

on the facts alleged) Wong and Solomon could not have known whether R.P. would later seek medical attention or continue to experience adverse effects from the tight handcuffs that allegedly caused him pain and numbness during his detention.  In contrast, they *could* be expected to know the "well-established" principles that overly tight handcuffs can constitute excessive force that violates the Fourth Amendment.  *See Wall*, 364 F.3d at 1112.

In Defendants' own words, "the most compelling factor is the level of threat posed by the suspect."  ECF No. 69 at 14–15 (citing *Lowry*, 858 F.3d at 1258).  Defendants assert that R.P. "omits any facts regarding the basis of his arrest and zip tying."  *Id.* at 15.  The Court disagrees. R.P. alleges that he attempted to attend a famous event to "watch[] people skate,"  SAC ¶ 1, that he engaged in "no criminal activity," *id.*, that he attempted to leave soon after he arrived because the event had ended, *id.* ¶ 20, that he followed a route to leave as instructed by police officers, *id.* ¶¶ 20–21, and that "he and everyone else on the street were indiscriminately detained" by the police, *id.* ¶ 21.  Based on the facts alleged by R.P., he was a bystander to the aftermath of a skateboarding event and posed no threat to officers.  *Cf. Gordon v. City & County of San Francisco*, No. 20-cv-03910-JCS, 2021 WL 5449074, at *12–13 (N.D. Cal. Nov. 22, 2021) (holding on summary judgment that officers' refusal to adjust handcuffs to relieve the plaintiff's shoulder pain was reasonable when the plaintiff had previously fought with them).  The Court declines to adopt Defendants' apparent contention that the Fourth Amendment permits police officers to impose pain and loss of feeling on an apparently compliant and non-threatening detainee through the use of tight handcuffs, over the detainee's request for relief, during an hours-long detention, and in the absence of any facts apparent from the Second Amended Complaint that might justify such treatment.

Of course, a factual record might reveal additional facts beyond what R.P. has alleged. Defendants might dispute some of his allegations or might believe that R.P. has omitted relevant context.  Defendants may present their own evidence and view of the facts at a later stage of the case.  At the pleading stage, however, the Court takes R.P.'s allegations as true, and the federal pleading standard does not require R.P. to include in his complaint whatever facts *Defendants* believe are relevant.  Based on those allegations, R.P. has plausibly alleged that Wong applying

zip ties tight enough to cause pain and numbness, and Solomon refusing to loosen them when R.P. brought that to his attention, constituted excessive force under the circumstances of a detainee swept up in a mass arrest, with no indication of resistance.

Defendants also contend that R.P. has not alleged his complaints were ignored, because he acknowledged that Solomon checked his handcuffs. But merely looking at handcuffs without loosening them provides no relief to a detainee suffering pain and numbness. Perhaps Solomon will be able to provide evidence that he reasonably concluded the handcuffs were not too tight. Based on R.P.'s allegations, however, Solomon perpetuated R.P.'s unwarranted pain and loss of feeling by refusing the loosen the handcuffs.

Defendants' motion to dismiss R.P.'s excessive force claim under § 1983 against Wong and Solomon is therefore DENIED.

### b.    False Arrest Under § 1983

The Fourth Amendment to the U.S. Constitution prohibits "unreasonable . . . seizures." U.S. Const. amend. IV. Although the Fourth Amendment often requires a police officer to have individualized probable cause to arrest a suspect, whether such cause is *individualized* is not an "irreducible requirement," and the ultimate question is whether the officer's belief that the suspect committed a crime "was reasonable in light of the circumstances." *Lyall v. City of Los Angeles*, 807 F.3d 1178, 1194 (9th Cir. 2015). "If a group or crowd of people is behaving as a unit and it is not possible . . . for the police to tell who is armed and dangerous or engaging in criminal acts and who is not, the police can have [probable cause[4]] as to the members of the group." *Id.* "Police witnesses must only be able to form a reasonable belief that the entire crowd is acting as a unit and therefore all members of the crowd violated the law." *Carr v. District of Columbia*, 587 F.3d 401, 408 (D.C. Cir. 2009) (reversing summary judgment granted in favor of plaintiffs bringing Fourth Amendment claims after being arrested for participating in a riot). On the other hand, "if a person

---

[4] Although *Lyall* primarily concerned reasonable suspicion for the purpose of a *Terry* stop rather than probable cause for arrest, that opinion cites with approval *Carr v. District of Columbia*, 587 F.3d 401 (D.C. Cir. 2009), which applied a substantially similar standard for individualization in the context of probable cause for arrest. This Court therefore understands *Lyall* as expressing the Ninth Circuit's view of individualized versus group suspicion in both the reasonable suspicion context and the probable cause context.

United States District Court
Northern District of California

1    is simply present in the vicinity of potential criminal activity, without doing anything else to

2    indicate that he is engaging in criminal activity or that he is armed and dangerous, the police do

3    not have probable cause to search him or reasonable suspicion sufficient to detain him and frisk

4    him for weapons." *Lyall*, 807 F.3d at 1194.

5          The Court addressed this test in detail in the related *J.T.* case, holding that the plaintiffs

6    there sufficiently alleged that police lacked probable cause to arrest them at the Dolores Hill

7    Bomb, whether under a test of group suspicion or of individualized suspicion. *J.T. v. City &*

8    *County of San Francisco*, No. 23-cv-06524-LJC, 2024 WL 3012791, at *6–8 (N.D. Cal. June 13,

9    2024). Defendants have not identified any meaningful difference here from that previous

10   decision.

11         Instead, Defendants contend that R.P. should be required to allege further details of his

12   arrest, including:

13              how R.P. was able to arrive at the Hill Bomb and observe it was over
                but was then unable to turn around and leave by the same path he used
14              to arrive or by some other path of egress; what the event was that
                renders any detention unlawful; the time period during which R.P.
15              was at the event until the time he was detained and arrested; the time
                period that he had from the time that he was directed where to go until
16              the time he was arrested; the location he was where he was told to
                leave and where he was told to go in order to leave; the location he
17              first presented to at the event; the route that he attempted to follow to
                leave the event; the distance from the point he appeared at the event
18              to the point he was detained; the basis that Defendants Scott and
                Harvey decided to order the mass arrest; any facts to support the
19              allegation that the mass arrest was indiscriminate; any facts to support
                the allegation that there was no probable cause to arrest individuals
20              who did not follow dispersal orders regarding the unlawful assembly
                and the riot; any facts to support the allegation that innocent
21              bystanders were not given a reasonable opportunity to leave; any facts
                regarding the sanctioned, permitted, or illegal nature of the events that
22              gave rise to the mass arrest; nor any facts regarding the length of the
                event, or the dispersal attempts.
23

24   ECF No. 87 at 5.

25         The federal pleading standard requires "a short and plain statement of the claim," Fed. R.

26   Civ. P. 8(a), including sufficient factual allegations to support a plausible inference that the

27   defendant is liable, *Iqbal*, 556 U.S. at 678. Defendants' list of potentially relevant facts

28   resembles—and potentially exceeds—the "particularity" required by the heightened pleading

standard for claims sounding in fraud under Rule 9(b) of the Federal Rules of Civil Procedure, which is not applicable here. *See* Fed. R. Civ. P. 9(b); *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (stating that a complaint subject to that rule "must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity").

Here, R.P. has alleged that he arrived in a public place in the hope of viewing a skateboarding event, tried to leave when he saw that the event had ended, followed instructions given by police officers as to how he should leave, and was nevertheless subject to a mass arrest. Drawing all reasonable inferences in R.P.'s favor, the Court declines Defendants' invitation to infer that there was probable cause to arrest anyone in the vicinity of the event merely because R.P. has alleged that hundreds of people were arrested on a city street—particularly when R.P. alleges that he was following instructions of police officers at the time he was walking on the street. *See* SAC ¶ 21; *J.T.*, 2024 WL 3012791, at *18 ("[N]othing in the Amended Complaint indicates that the crowd was violent, presented any danger of violence, or collectively engaged in any unlawful act."); *cf.* ECF No. 69 at 22 (Defendants' assertion that by being "on the street" with a crowd, R.P. "was causing a nuisance in the neighborhood and interfering with the use of public property").

The additional details Defendants seek may be appropriate to explore through discovery and address on an evidentiary record, but R.P. need not preemptively answer in his complaint all questions Defendants might think to ask of him. The details that that Defendants identified and are able to uncover through discovery indicate that R.P.'s complaint gave them "notice of the claim such that the opposing part[ies] may defend [themselves] effectively." *Starr v. Baca*, 652 F.3d 1201, 1212 (9th Cir. 2011). Because R.P. has alleged facts sufficient to infer a plausible claim, and his allegations gave Defendants fair notice, Defendants' motion to dismiss R.P.'s false arrest claim under § 1983 is DENIED.

### c.    Supervisor Liability

R.P. addresses his claim for "Supervisor Liability" as an extension of his Fourth Amendment false arrest claim, *see* ECF No. 84 at 16–18, and the Court construes it as such. The parties dispute whether police supervisors Harvey, Sullivan, and Scott can be held liable on that

theory.[5]

"Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations of subordinates and failed to act to prevent them." *Vazquez v. County of Kern*, 949 F.3d 1153, 1166 (9th Cir. 2020) (cleaned up). A supervisor can be held liable under § 1983 based on "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation," including "for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr*, 652 F.3d at 1208. "The requisite causal connection can be established by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (cleaned up).

"Conclusory allegations" that a defendant "'directed' the other defendants to take [certain] actions," made "on information and belief," can be insufficient to state a claim for supervisor liability if they lack sufficient factual support. *Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013) (considering claims under state law, but basing the decision on the federal pleading standard equally applicable here). In *Blantz*, however, "the allegation that . . . the Chief Medical Officer of the Receiver and a member of the Governing Body of the CDCR[ ]had any role in or knowledge of the decision to terminate [the plaintiff] or give her a negative reference [was] not 'plausible on its face,'" because "common sense" dictated that such a senior official would not have had any role in terminating an independent contractor nurse or giving her a negative performance review. *Id.* at 927 (quoting *Twombly*, 550 U.S. at 570).

Here, in contrast, R.P. has alleged a mass arrest of "hundreds" of people at a "famous" event. SAC ¶ 1, 26. It reasonable to infer that supervisory officers would direct such a response,

---

[5] In the absence of any indication that R.P. intended this theory to encompass his Fourth Amendment excessive force claim, the Court declines to construe it as including that claim.

United States District Court
Northern District of California

1    and that the Chief of Police might be involved in at least monitoring such activities related to a

2    well-known and anticipated event.  *See Martinez v. City of Santa Rosa*, 499 F. Supp. 3d 748, 750

3    (N.D. Cal. 2020) ("[W]hen the department is executing an organized, department-wide response,

4    one can presume that the police chief was in control of his department, either directing that

5    response himself or—at the very least—ratifying the actions of his subordinates.").  In that

6    context, R.P.'s otherwise somewhat thin allegations (on information and belief) that Harvey and

7    Sullivan directed the "indiscriminate" mass arrest, SAC ¶ 26, and that Scott "kept tabs on" and

8    "approved" their decision, *id.* ¶¶ 27–28, meet the relatively low bar of plausibility.  *See J.T.*, 2024

9    WL 3012791, at *14 (denying a motion to dismiss similar claims based on supervisor liability and

10   the same event).

      Defendants' motion to dismiss R.P.'s supervisor liability claim against Harvey, Sullivan,

12   and Scott is therefore DENIED.

### 3.    *Monell* Liability

14         As Defendants correctly note in their Motion, ECF No. 69 at 22, the Second Amended

15   Complaint does not purport to assert a constitutional claim against the City.  *See* SAC ¶¶ 34–44.

16   R.P. does not claim to have done so in his opposition brief.  *See generally* ECF No. 84.  The Court

17   therefore need not and does not reach Defendants' arguments that the Second Amended Complaint

18   lacks sufficient allegations to support such a theory.  *See* ECF No. 69 at 23.

### C.    State Law Claims

### 1.    Bane Act

21         California's Bane Act, section 52.1 of the Civil Code, "provides a cause of action for

22   violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or

23   coercion."  *Reese v. County of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation and

24   internal quotation marks omitted).

25         Defendants argue that R.P. cannot satisfy the Bane Act's requirement of specific intent, as

26   recognized by a California appellate court in *Cornell v. City & County of San Francisco*, 17 Cal.

27   App. 5th 766, 801 (2017).  ECF No. 69 at  87 at 7–8.  The Ninth Circuit held in *Reese* that a

28   showing of "reckless disregard for a person's constitutional rights" can meet that standard, 888

United States District Court
Northern District of California

F.3d at 1045, and at least one decision from this district has held that a lack of probable cause to arrest is enough to show reckless disregard, at least to avoid dismissal under Rule 12(b)(6). *Mehta v. City of Sunnyvale*, No. 23-cv-03193-PCP, 2024 WL 950165, at *5 (N.D. Cal. Mar. 5, 2024). As in the earlier *J.T.* decision, the "Court is satisfied that [R.P.'s] allegations of an indiscriminate mass arrest without probable cause support a sufficient inference that the Defendants who ordered"—and carried out—"that arrest acted with reckless disregard for arrestees' right to be free from unreasonable seizures." *See J.T*, 2024 WL 3012791, at *16.

Defendants' assertion that R.P.'s allegation of an "indiscriminate" mass arrest "contradicts" the specific intent requirement, *see* ECF No. 87 at 8, is not consistent with either the Ninth Circuit's interpretation of that requirement as encompassing reckless disregard, *Reese*, 888 F.3d at 1045, or with clear precedent that arresting bystanders "simply in the present in the vicinity of potential criminal activity" violates the Fourth Amendment, *Lyall*, 807 F.3d at 1194. "[I]t is not necessary for the defendants to have been thinking in constitutional or legal terms at the time of the incidents" in order to establish "a reckless disregard for a person's constitutional rights." *Reese*, 888 F.3d at 1045 (cleaned up).

Drawing all reasonable inferences in R.P.'s favor, it is also plausible that Solomon acted with reckless disregard to R.P.'s constitutional rights by failing to loosen R.P.'s handcuffs despite: (1) R.P. telling Solomon he could not feel his hand; and (2) Solomon apparently inspecting the purportedly injurious handcuffs. If the Court were to draw reasonable inferences in favor of *Solomon*, his alleged statement that the "pass is alright" might tend to suggest that he genuinely (and perhaps reasonably) did not believe the handcuffs were too tight. *See* SAC ¶ 24. But that is not the standard of review on this Motion. Viewing the Complaint in the light most favorable to R.P., Solomon's dismissal of R.P.'s complaints, despite an opportunity to observe that the handcuffs were cutting off feeling to his hand, is consistent with an inference of reckless disregard.

Defendants do not argue specifically that R.P.'s Bane Act claim should be dismissed for failure to allege a "threat, intimidation or coercion beyond that which was inherent in the . . . allegedly unconstitutional . . . seizure," but their Motion quotes a district court decision reciting

that standard.  ECF No. 69 at 19 (quoting *Inman v. Anderson*, 294 F. Supp. 3d 907, 931 (N.D. Cal. 2018).  *Inman* acknowledged that California courts were divided as to whether the statute required additional coercion beyond that inherent in a particular violation.  *Inman*, 294 F. Supp. 3d at 929–31 (comparing *Cornell*, 17 Cal. App. 5th 766, with, *e.g.*, *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 959 (2012)).  Since that decision, however, the Ninth Circuit has resolved the issue in a decision binding on this district, holding that no such independent or additional force or coercion is required.  *Reese*, 888 F.3d at 1043–44 & n.5; *see J.T.*, 2024 WL 3012791, at *16.[6] That standard is therefore no basis for dismissal.

Defendants' Motion could perhaps also be construed as asserting that supervisor liability is not available under the Bane Act, *see* ECF No. 69 at 18 ("The state-based [supervisor] claims should be dismissed as a matter of law; this [sic] supervisor liability for the Bane Act . . . .").  If so, the Court rejects that argument for the same reasons stated in *J.T.*  *See* 2024 WL 3012791, at *17 (recognizing a split of district court authority, and siding with cases finding such a claim viable).

Finally, aspects of Defendants' argument could be read to suggest that even if Defendants knowingly and culpably ordered a mass arrest of a crowd without reason to believe *anyone* in that crowd had engaged in criminal activity, they could not be liable to R.P. under the Bane Act without a showing that they had targeted him *personally* for mistreatment.  *See* ECF No. 69 at 20 ("Plaintiff['] s only facts seem to negate the [Bane Act] claim[] because as soon as he appeared at the concluded event, he was detained, so no facts regarding specific intention, planning, or commands can be inferred.").  To the extent that might be Defendants' position, the Court is not aware of any authority interpreting the Bane Act's intent requirement in that manner.

Accordingly, Defendants' motion to dismiss R.P.'s Bane Act claim is DENIED.

---

[6] Defendants also cite *Allen v. City of Sacramento* for its conclusion that "a wrongful arrest or detention, without more, does not satisfy both elements of" the Bane Act.  234 Cal. App. 4th 41, 69 (2015); *see* ECF No. 69 at 20.  But the second element that *Allen* considered was *Shoyoye*'s requirement for "coercion beyond the coercion inherent in any arrest," *see Allen*, 234 Cal. App. 4th at 26, which the Ninth Circuit has since rejected in *Reese*.

United States District Court  
Northern District of California

### 2.    Battery

"A state law battery claim is a counterpart to a federal claim of excessive use of force."
*Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009).  At least with respect to the individual defendants, neither party suggests there is a meaningful difference between R.P.' excessive force claim under § 1983 and his battery claim under California law.  *See, e.g.*, ECF No. 87 (Defs.' Reply) at 7 ("For the same reasons [as the excessive force claim], Plaintiff's battery claim fails. California battery claims similarly require the force to be unreasonable." (citing *Brown*, 171 Cal. App. 4th at 527)).

Defendants assert briefly in their Motion that "Plaintiff's claim against the City fails because battery is not a cognizable claim against a municipality," citing section 815.2(a) of the California Government Code.  ECF No. 69 at 17.  That statute provides that a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  Cal. Gov't Code § 815.2(a).  It offers no support for Defendants' assertion that battery is not cognizable against a municipality.  To the contrary, that law provides the necessary statutory basis for holding the City liable on this claim.  *See* Cal. Gov't Code § 815 ("Except as otherwise provided by statute . . . [a] public entity is not liable for an injury . . . .").  If any other support for Defendants' position exists, Defendants have not cited it.  Defendants do not renew that argument in their Reply.  *See* ECF No. 87 at 6–7.

Accordingly, for the reasons discussed above with respect to R.P.'s § 1983 excessive force claim, Defendants' motion to dismiss R.P.'s battery claim is DENIED.

### 3.    False Arrest and Imprisonment

Much like the excessive force and battery claims, the parties largely treat R.P.'s false arrest and imprisonment claims under the Fourth Amendment and state law as coextensive.  *See* ECF No. 69 at 21–22; ECF No. 84 at 11–14; ECF No. 87 at 5–6.

Defendants argue that they are entitled to immunity under section 847(b) of the California Penal Code, which they characterize as coextensive with qualified immunity under federal law.

ECF No. 69 at 22.  As this Court stated in *J.T.*, a "California appellate court in *Cornell* persuasively held that section 847(b) neither protects an arrest made without probable cause nor imports the federal qualified immunity standard into state law."  2024 WL 3012791, at *18 (citing *Cornell*, 17 Cal. App. 5th at 786–90).  But in any event, R.P.'s allegations do not show that Defendants are entitled to qualified immunity for conducting the alleged mass arrest, in which R.P. was detained after allegedly complying with police officers' instructions for how to leave.  Defendants' Motion includes no argument that qualified immunity should apply—its only reference to qualified immunity is the assertion in a parenthetical that section 847(b) provides the same protection.  *See* ECF No. 69 at 22.  Defendants' Reply does not mention qualified immunity at all.  *See generally* ECF No. 87.

For the same reasons discussed above with respect to R.P.'s parallel Fourth Amendment claim, Defendants' motion to dismiss R.P.'s false arrest and imprisonment claim under state law is DENIED.

### 4. Negligence

Defendants argue that R.P.'s negligence claim against the City must be dismissed for failure to allege a statutory basis for liability, as required by section 815 of the California Government Code.  ECF No. 69 at 21.  As discussed above, however, section 815.2(a) of the Government Code—which R.P. cites specifically in his Second Amended Complaint, SAC ¶ 62— provides that public entities may be held liable for their employees' conduct, to the same extent as the employees themselves.  Defendants do not challenge R.P.'s negligence claim as to any of the individual defendants,[7] all of whom are named as defendants to that claim.  *See* ECF No. 69 at 21; SAC ¶¶ 57–62.

Negligence claims under California law often rise or fall with related Fourth Amendment claims.  "To prevail on a claim for negligence, Plaintiffs must show that the Defendant officers

---

[7] Although not addressed in the portion of the Motion addressing the negligence claim, one sentence of the section addressing supervisor liability asserts that R.P. has not alleged sufficient facts to support a negligence claim against supervisors.  ECF No. 69 at 18.  For the same reason discussed above with respect to supervisor liability under § 1983, the Court concludes that R.P. has provided sufficient allegations of Scott, Harvey, and Sullivan's personal involvement in the events at issue to support a negligence claim.

United States District Court
Northern District of California

acted unreasonably and that the unreasonable behavior harmed Plaintiffs. 'Reasonableness' under the Fourth Amendment and 'reasonable care' under a negligence theory are synonymous insofar as they consider the same conduct." *Dudgeon v. County of Sonoma*, No. 19-cv-05615-JCS, 2021 WL 5407519, at *15 (N.D. Cal. Nov. 18, 2021) (cleaned up).

In the absence of any argument for dismissal besides section 815 of the Government Code, and for the reasons discussed above with respect to R.P.'s Fourth Amendment claims, the motion to dismiss R.P.'s negligence claims is DENIED.

### D.    Doe Defendants

The parties agree that the Ninth Circuit's 1980 decision in *Gillespie v. Civiletti* remains an accurate source of law regarding the use of unidentified "Doe Defendants" in federal court. *See* ECF No. 69 at 24; ECF No. 84 at 10. That case reversed dismissal of a complaint involving Doe Defendants, stating as follows:

> As a general rule, the use of "John Doe" to identify a defendant is not favored. However, situations arise, such as the present, where the identity of alleged defendants will not be known prior to the filing of a complaint. In such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (citations omitted); *see also Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Here, the Court already granted R.P. a period of "more than five months . . . to identify the defendants [he] wishes to sue," and required him to file an amended complaint naming at least some of the Doe Defendants sued by his original Complaint no later than October 29, 2024. ECF Nos. 42, 54. Due to a dispute about body camera video footage that had not been produced at the time, the Court indicated at an October 3, 2024 case management conference that R.P. should name any defendants he could by the October 29, 2024 deadline, and seek leave for any further amendment if Defendants were not willing to stipulate to it. ECF No. 54. The Court also set a deadline to amend or add parties—as stipulated by all parties—of February 7, 2025. ECF No. 55.

Defendants argue that the remaining Doe Defendants should be dismissed because R.P. has missed his chance to identify them, and because he has not included sufficient allegations of their

United States District Court
Northern District of California

involvement.  R.P. contends that Defendants have not yet produced all relevant body camera video and other discovery necessary to identify the Doe Defendants, and that he has included sufficient allegations of their involvement.  This Order should not be construed as prejudging the merits of any such motion, and the burden will be on R.P. to show sufficient cause for any belated amendment.

Although the case has now nearly reached the deadline set to amend or add parties, it remains possible that R.P. could make a sufficient showing of good cause to obtain relief from that scheduling order based on discovery produced late in the case by Defendants.  And while some of R.P.'s allegations regarding Doe Defendants are fairly conclusory, at least some such allegations appear to identify sufficiently specific involvement to state a viable claim, like the two unidentified officers who allegedly ignored R.P.'s requests to loosen his handcuffs during the hours he was detained on the street.  *See* SAC ¶ 24.  The propriety of any subsequent request to amend to identify Doe Defendants, and the sufficiency of allegations against any such defendant, are better addressed under the circumstances of a particular proposed amendment.

At least one decision from this district—not addressed by the parties—has held that summary judgment on claims against Doe Defendants was appropriate when the deadline to amend and add parties had expired.  *Maestrini v. City & County of San Francisco*, No. C 07-2941 PJH, 2009 WL 814510, at *11–12 (N.D. Cal. Mar. 26, 2009); *see also Garcia ex rel. Est. of Acosta-Garcia v. Clark County*, No. 207-CV-01507-RCJ-PAL, 2009 WL 3786060, at *4–5 (D. Nev. Nov. 10, 2009), *aff'd*, 428 F. App'x 706 (9th Cir. 2011).  That approach is sensible.  A plaintiff must amend to name Doe Defendants (and also serve them) before a claim against such defendants could proceed to trial, so if the opportunity to amend or add parties has expired, the claim is no longer viable.

Because it is at least possible that R.P. could show sufficient cause to amend his Complaint after the deadline previously set by the Court, however, it remains too early to dismiss Doe Defendants merely because the case has reached the deadline stated in the scheduling order.  If any Doe Defendants remain by the time the case reaches summary judgment, the Court anticipates that the approach taken by the *Maestrini* and *Garcia* courts would be appropriate.

Defendants' motion to dismiss all claims against Doe Defendants is DENIED, without prejudice to renewing that request in the context of summary judgment, and without prejudging whether any request to amend further would be granted.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss R.P.'s Second Amended Complaint is DENIED.

**IT IS SO ORDERED.**

Dated: February 6, 2025

_____

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California