United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

R.P.,

Plaintiff,

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

Defendants.

Case No. 24-cv-00522-LJC

**ORDER REGARDING MOTION TO EXCLUDE EXPERT OPINION EVIDENCE**

Re: Dkt. No. 123

## I. INTRODUCTION

Plaintiff R.P. was one of more than one hundred people, mostly minors, arrested[1] in 2023 in the aftermath of the Dolores Hill Bomb, an unsanctioned skateboarding event near Dolores Park in San Francisco. He brings claims under 42 U.S.C. § 1983 for wrongful arrest and excessive force in violation of the Fourth Amendment to the U.S. Constitution, as well as related claims under state law. Defendants[2] move to exclude certain opinions of Plaintiff's expert witness Adam Bercovici, a public safety consultant and former police officer. ECF No. 123. Plaintiff opposed the motion, and the Court held a hearing. ECF Nos. 133, 137. Having considered the parties' arguments, the record, and the applicable legal authorities, for the reasons discussed below, Defendants' Motion to Exclude is GRANTED in part and DENIED in part.[3]

[1] In this case and a related class action, Defendants have at times objected to the term "arrest" on the basis that California law distinguishes detention of minors from arrests of adults. This Order uses the term "arrest" in its colloquial sense, which encompasses Plaintiff's involuntary detention, handcuffing, and transportation by police officers. In doing so, the Court makes no finding as to the appropriate classification of that detention under California law.

[2] The City and County of San Francisco, its police chief at the time William Scott (now in a similar role with the Los Angeles County Metropolitan Transit Authority), Captain Thomas Harvey, then-Lieutenant (now Captain) Matt Sullivan, Officer John Solomon, and then-Officer Nelson Wong (now retired).

[3] The parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II. LEGAL STANDARD

A party may offer opinion evidence from a "witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. That rule represents a "relaxation of the usual requirement of firsthand knowledge . . . premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Rule 702 of the Federal Rules of Evidence sets forth the following criteria for expert opinion evidence:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Those considerations essentially require a court to consider expert testimony's "reliability and relevance." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011). They do not call for "a court to admit or to exclude [expert opinion] evidence based on its persuasiveness." *Id.*

"Not all expert testimony requires adherence to a strict methodology." *Richards v. Dep't of Bldg. Inspection*, No. 20-cv-01242-JCS, 2021 WL 5415254, at *16 (N.D. Cal. Nov. 19, 2021). "*Daubert* makes clear that the factors it mentions"—testing, peer review, known error rates, and the like—"do *not* constitute a 'definitive checklist or test.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 593). "[T]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* (citation omitted). Scientific methods "will be at issue in some cases," but "[i]n other cases, the relevant reliability concerns may focus upon personal knowledge or expertise." *Id.*

## III. ANALYSIS OF CHALLENGED OPINIONS

This Order addresses only the arguments Defendants advance to exclude Bercovici's

opinions. This analysis is not intended as a complete summary of his opinions.

**A. Plaintiff was "Improperly Detained"**

Bercovici's first opinion is that "San Francisco Police Department leadership, including Captain Harvey and Lieutenant Sullivan, improperly detained Plaintiff as part of a mass arrest." ECF No. 128-1 at 12–13; *see id.* at 12–16. In reaching that conclusion, Bercovici states that Defendants "failed . . . to provide an avenue for escape," "failed to follow established SFPD policies," made "no attempt to differentiate . . . who were active participants and those not guilty of any criminal activity who were caught up in the crowd," and thus "embraced the concept of kettling anyone who just happened to be in the area." *Id.* at 12–13. He discusses principles of crowd management, and asserts that aspects of Defendants' execution of the mass arrest at issue—including a purported 41-minute delay between the final order to disperse and the mass arrest—were unreasonable. *Id.* at 14–15.

Defendants move to exclude Bercovici's opinion that "Defendants 'improperly detained' Plaintiff" on the basis that it "is the ultimate issue of law in this false arrest case." ECF No. 123 at 7–8.

> It is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002). Indeed, Fed. R. Evid. 704(a) provides that expert testimony that is "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." That said, "an expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." *Mukhtar,* 299 F.3d at 1066 n. 10. Similarly, instructing the jury as to the applicable law "is the distinct and exclusive province" of the court. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (citations and quotation marks omitted).

*Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004).[4]

"Plaintiff does not oppose Defendants' motion to the extent it seeks to preclude Mr. Bercovici from testifying that Plaintiff was 'improperly detained,'" which Plaintiff agrees is "an

---

[4] *Mukhtar*, on which the Ninth Circuit relied in *Hangarter*, was later overruled on other grounds by *United States v. Bacon*, 979 F.3d 766, 770 (9th Cir. 2020) (en banc). *Bacon* addressed only the available remedies if an appellate court determines that a district court erred in its application of the *Daubert* standard, and does not call into question the holdings of *Mukhtar* and *Hangarter* with respect to "ultimate issue" testimony.

issue for the jury to decide from the evidence presented at trial" and a "legal conclusion" within the meaning of *Hangarter*. ECF No. 133 at 4. Plaintiff opposes Defendants' motion to the extent it could be construed as seeking to exclude the remainder of Bercovici's first opinion addressing "established policies and standards for ensuring bystanders are not arrested in a mass arrest situation." *Id.* Defendants clarify in their reply brief that they seek only to exclude Bercovici's opinion on the ultimate issue of the propriety of Plaintiff's detention, and "did not move to exclude the remainder of Bercovici's first opinion." ECF No. 135 at 4.

Defendants' motion to exclude Bercovici's opinion that Plaintiff was improperly detained is GRANTED as unopposed. The remainder of Bercovici's first opinion is not excluded.

### B. Opinions Regarding Handcuffing

#### 1. Summary of Opinions

In his third opinion,[5] Bercovici critiques Defendants' use of plastic handcuffs (also known as flex cuffs) to detain Plaintiff. ECF No. 128-1 at 20–22. Bercovici states that Defendant "Wong would have known not to place plastic cuffs on a minor in a manner that was too tight, with the possibility of causing injury." *Id.* at 21. Bercovici characterizes Wong's conduct as "punitive," "malicious, willful, and negligent," and states that it "caused injury to" Plaintiff. *Id.*

Bercovici also criticizes Defendant Solomon's conduct in responding to Plaintiff's complaints about his handcuffs. *Id.* at 21–22. Bercovici recounts that Solomon "insert[ed] his pointer finger to see if there was a sufficient gap and they were the proper degree of tightness" and responded, "That pass is alright." Bercovici states that he is "unaware of any policy-driven method as described by Solomon to gauge the discomfort of a handcuffed minor," and that "Solomon's response and failure to act when asked by R.P., a minor, to loosen his handcuffs was malicious, willful, and negligent, and fell below the standard of care of a minor in police custody." *Id.* at 21–22. According to Bercovici, the correct response was to "ensure[] that R.P., a minor, was not in pain and loosen[] the handcuffs as requested." *Id.* at 22.

[5] Defendants do not move to exclude Bercovici's second opinion, that Defendants violated their own policy and applicable standards in detaining Plaintiff. *See* ECF No. 128-1 at 16–20.

United States District Court
Northern District of California

**2. Opinion Regarding Too-Tight Handcuffs**

Defendants move to exclude "Bercovici's opinion that Officer Wong put the handcuffs on 'too tight'" as lacking any basis in specialized knowledge and intruding on the role of the jury. ECF No. 123 at 8–9. Plaintiff does not specifically address that opinion—that the handcuffs were in fact applied too tightly—in his opposition brief. ECF No. 133 at 4–5. In the absence of any explanation for how Bercovici determined that Wong applied the handcuffs too tightly, Defendants' motion to exclude that opinion is GRANTED.[6]

Plaintiff instead argues in his opposition brief that Bercovici should be allowed to testify "that Defendant Wong was trained in specialized crowd management duties, including handcuffing, and that an officer with the same training and experience as Defendant Wong would know how to properly secure a minor in flex cuffs without cutting off the circulation to the minor or injuring them." ECF No. 133 at 4–5. In their reply, Defendants do not dispute that "Bercovici can testify about training and handcuffing procedure," and do not otherwise address the testimony that Plaintiff contemplates regarding Wong's training and experience. Plaintiff has agreed to dismiss all claims against Wong, but in light of Defendants' non-objection to these opinions regarding training, the Court declines to exclude them to whatever extent that they might be relevant to Plaintiff's remaining battery and excessive force claims against Solomon and the City.

**3. Opinion Regarding Extended Time**

Defendants move to exclude "Bercovici's opinion that the handcuffs were 'too tight for an extended time'" as "unsupported and unreliable," noting that Bercovici testified at his deposition that he did not know how long Plaintiff was handcuffed. ECF No. 123 at 9–10. Plaintiff asserts that even though Bercovici "did not know the *exact* amount of time Plaintiff remained in handcuffs, Plaintiff was in flex cuffs for over an hour, which was too long for Defendants to keep

[6] To the extent Plaintiff's opposition brief could be construed as implicitly arguing that Bercovici's training and experience support this opinion, neither Plaintiff's brief nor the record as a whole show how that training and experience would allow Bercovici to offer an expert opinion on the disputed factual question of how tightly the handcuffs were applied. Bercovici testified that his opinion regarding the actual tightness of the handcuffs was based on Plaintiff's statements. ECF No. 128-2 at 15–16 (Bercovici Dep. at 208:5–209:1) ("That's what it's based on, on his statement that the handcuffs were too tight."). The jury is as capable as Bercovici is of evaluating Plaintiff's credibility, and his expertise does not extend to such evaluation.

United States District Court
Northern District of California

juvenile detained in flexcuffs." ECF No. 133 at 5. That is a generally accurate characterization of Bercovici's deposition testimony, as follows:

> Q. You're saying they were on too long, but you don't know how long they were on?
>
> A. I don't know how long they were on.
>
> Q. Do you have an estimated time of how long they were on?
>
> A. Over an hour.
>
> Q. Over an hour. In your opinion, that's too long?
>
> A. Oh, yeah. Have you ever had handcuffs on you for an hour, it's a long time.

ECF No. 128-2 at 14 (Bercovici Dep. at 207:5–14).

Defendants are correct that Bercovici has no apparent basis to opine on how long Plaintiff was handcuffed—or at the very least, no basis that rests on the sort of specialized knowledge appropriate for expert testimony. To the extent Bercovici purports to offer such an opinion, Defendants' motion to exclude it is GRANTED. To the extent that Bercovici offers an opinion that a minor should not be handcuffed for over an hour, however, Defendants have not addressed that opinion specifically or offered a specific reason to exclude it. The Court declines to exclude that opinion.

**4. Opinions Regarding Injuries and Causation**

Defendants also argue that "Bercovici is not qualified to opine on Plaintiff's injuries or causation," quoting Bercovici's deposition testimony acknowledging that he is "not a medical expert," does not "know what [Plaintiff's] injuries were," and is "certainly not qualified to opine on his injuries." ECF No. 123 at 10 (quoting ECF No. 128-2 at 19 (Bercovici Dep. at 212:8–10)). Plaintiff does not address that aspect of Defendants' motion. *See* ECF No. 133 at 4–5. Defendants' motion to exclude any opinions regarding the nature of Plaintiff's injuries or how they were caused is GRANTED based on Bercovici's acknowledgment that he is not qualified to offer such opinions.

**5. Opinions Regarding Discomfort of Plastic Cuffs**

In response to Defendants' motion, Plaintiff contends that "the Court should permit Mr.

United States District Court
Northern District of California

Bercovici to explain to the jury that police are trained that plastic cuffs are significantly more uncomfortable than regular metal handcuffs, and they can cause a significant amount of damage if they are left on too tightly." ECF No. 133 at 5. Bercovici testified at his deposition:

> The handcuffs were still -- plastic cuffs are extraordinarily uncomfortable, much more so than regular cuffs, and they can cause, because of the nature of the way they are made, can cause a significant amount of damage if they are left on too tight for some time.
>
> That's part of the training I received 25 years ago on plastic handcuffs.

ECF No. 128-2 at 17 (Bercovici Dep. at 210:11–17).

Defendants object that Bercovici did not disclose that opinion in his report, where he instead stated that plastic handcuffs have "the same in form and function as metal handcuffs." ECF No. 135 at 6 (quoting ECF No. 128-1 at 20). Plaintiff did not have an opportunity to address that argument raised for the first time in Defendants' reply. Belated expert disclosures are permissible under some circumstances, i.e., if the delay is harmless or substantially justified. *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). Without reaching the question of whether Bercovici sufficiently disclosed an opinion regarding the relative discomfort of plastic versus metal handcuffs, or whether his statement regarding their "same form and function" precludes that opinion, the Court declines to consider Defendants' argument for exclusion raised for the first time in their reply.

This decision is without prejudice to the parties addressing that question on motions in limine if they are unable to resolve this dispute without the Court's intervention. The precise question that the parties may revisit is whether Bercovici sufficiently disclosed his opinion that police are trained that plastic cuffs are significantly more uncomfortable than regular metal handcuffs, and they can cause a significant amount of damage if they are left on too tightly.

**6. Opinion That Solomon Ignored Plaintiff**

Defendants move to exclude Bercovici's opinions that Solomon "ignored" Plaintiff's complaints and improperly failed to loosen his handcuffs. ECF No. 123 at 10–11. As Defendants note, Bercovici acknowledged at his deposition that Solomon checked Plaintiff's handcuffs by inserting his finger into a gap and "presumably" also visually inspected the tightness of the

handcuffs. *Id.* (citing ECF No. 128-2 at 17–18 (Bercovici Dep. at 210:22–211:7)).

Plaintiff contends that the Court should allow Bercovici "to opine that based on his experience and training on flex cuffs, simply placing fingers inside the cuff was not an adequate assessment of whether the cuffs were on too tightly or whether the cuffs were causing unnecessary pain." ECF No. 133 at 5. He cites *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005), for the premise that juries may consider expert testimony regarding whether conduct comported with police standards and training. ECF No. 133 at 5. Defendants argue that Bercovici's report and testimony do not support that purported opinion. ECF No. 135 at 6–7.

The only opinion regarding Solomon's conduct in Bercovici's report reads as follows:

> When Officer Solomon was alerted by R.P. that the plastic handcuffs were too tight, his response was to "insert his pointer finger to see if there was a sufficient gap and they were the proper degree of tightness. In my own experience, I am unaware of any policy-driven method as described by Solomon to gauge the discomfort of a handcuffed minor. His response to R.P. complaint [sic] that he was in pain was "That pass is alright." It is my opinion, based on my extensive training and experience managing and supervising police officers at Crowd Management incidents, that Solomon's response and failure to act when asked by R.P., a minor, to loosen his handcuffs was malicious, willful, and negligent, and fell below the standard of care of a minor in police custody. An officer with the same training and experience would have ensured that R.P., a minor, was not in pain and loosened the handcuffs as requested by R.P.

ECF No. 128-1 at 21–22 (unmatched quotation mark in original).

Plaintiff also cites the following portion of Bercovici's deposition:

> Q. Your opinion is really just that he didn't loosen the cuffs. I guess he would have had to cut them off, right?
>
> A. He could have cut them off.
>
> The goal of handcuffing somebody is not to keep them in pain. If somebody is pain, we should address that. That's my opinion.
>
> That's not even a policy issue. That's a humane issue. If somebody is in pain because they have plastic handcuffs on, and they are a juvenile, you should take whatever measures to ensure that you can address that.
>
> It may not solve every part of it, but they did nothing to solve it. To me, as a former supervisor, I would not have liked that, and I would have done something to ensure that person was comfortable, as much as possible with plastic handcuffs until the transport was completed.



United States District Court
Northern District of California

ECF No. 133-2 at 6 (Bercovici Dep. at 211:8–25); *see* ECF No. 133 at 3 (citing that testimony).

As Defendants note, however, Bercovici also testified that he was not "trained that if a person is complaining of tightness in flex cuffs, but they were on properly, that [he] had to replace them," nor that any San Francisco Police Department policy would require an officer to do so. ECF No. 128-2 at 9–10 (Bercovici Dep. at 121:18–122:3).[7] He further testified that Solomon's conduct was not a policy violation. *Id.* at 19 (Bercovici Dep. at 212:1–3). Bercovici testified that his own approach to assessing the tightness of plastic handcuffs was to "ask[] the person if it was reasonable," visually inspect the handcuffs to determine that there is a correctly sized gap to ensure the person is restrained without being too tight, and sometimes tug on the cuffs with his finger "to make sure they were secure, that they were locked, that they wouldn't inadvertently get tighter." *Id.* at 5–7 (Bercovici Dep. at 117:2–118:8, 119:2–9).

Taken as a whole, Bercovici's report and testimony suggest that his opinion regarding the unreasonableness of Solomon's conduct—testing the gap with his finger and "presumably" visually inspecting the cuffs, ECF No. 128-2 at 18 (Bercovici Dep. 211:5–7)—is based at least primarily on Bercovici's own views derived from his experience as a police officer, including as an officer with supervisory responsibilities.

As noted above, expert testimony will not always "require[] adherence to a strict methodology," *Richards*, 2021 WL 5415254, at *16, and reliability can sometimes be established through "personal knowledge or expertise," *Kumho Tire*, 526 U.S. at 150. Further, the Court's task here is not to determine whether Bercovici's opinion would be persuasive in the face of cross-examination:

> Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline. Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion. The judge is supposed

[7] Bercovici previously testified that his approach to too-tight flex cuffs would generally be to cut them off and apply new ones. ECF No. 128-2 at 8 (Bercovici Dep. at 120:8–18). His testimony regarding a lack of training or policies requiring such reapplication thus appears to relate generally to any obligation to adjust the cuffs. Bercovici did not otherwise identify any training or policy that requires officers to adjust plastic cuffs when a detainee complains that they are too tight.

> to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. Simply put, the district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.

*City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (cleaned up).

The jury in this case will be required to assess the reasonableness of Defendants' conduct, including Solomon's response to Plaintiff's complaints regarding his handcuffs. Defendants have not shown that Bercovici's opinions regarding that response are impermissible "nonsense," *see id.*, or that the opinions of an experienced former police officer regarding how officers should respond to such complaints would be unhelpful to the jury even if those opinions are not supported by specific training or policies. Defendants' motion is therefore DENIED to the extent that the Court will allow Bercovici to testify that in response to a complaint of pain, he "would have done something to ensure that person was comfortable, as much as possible with plastic handcuffs until the transport was completed," rather than merely checking the tightness of the handcuffs with his finger. *See* ECF No. 128-2 at 18 (Bercovici Dep. at 211:22–25).

Defendants are free to cross-examine Bercovici about the basis for that opinion and the extent to which it comports with police training. These are issues that the jury is capable of resolving and best positioned to address.

**7. Opinions Regarding Negligence**

Defendants move to exclude Bercovici's opinions that Wong and Solomon were negligent, asserting that they are improper legal conclusions and unsubstantiated conclusory assertions. ECF No. 123 at 11–12. As Defendants note, Judge Gonzalez Rogers excluded a similar assertion of negligence by Bercovici in another case. Judge Gonzales Rogers permitted him to modify his opinion as follows:

> Opinion four states an impermissible legal conclusion by stating that the department was negligent. Accordingly, the expert may modify his opinion as follows: "A reasonable police department would have provided current and up to date training in the handling of calls where there was a mental health crisis and by retaining a policy manual as it relates to police tactics that gave direction that was in direct opposition with CA POST training."

*Hart v. City of Redwood City*, No. 21-cv-02653-YGR, 2022 WL 18110847, at *11 (N.D. Cal. Dec.

United States District Court
Northern District of California

14, 2022), *rev'd on other grounds,* 99 F.4th 543 (9th Cir. 2024).[8]

Plaintiff's opposition brief does not address Bercovici's negligence opinions at all. *See generally* ECF No. 133. Nor is there any obvious modification that the Court could allow to Bercovici's opinions as in *Hart*, beyond other opinions separately stated in his report that Defendants do not challenge. Defendants' motion to exclude Bercovici's opinions that Wong and Solomon were negligent is GRANTED as unopposed, and on the basis that those opinions are improper legal conclusions.

**8. Opinions Regarding State of Mind**

Defendants move to exclude Bercovici's opinions "that Wong and Solomon's conduct was 'punitive,' 'malicious,' and 'willful.'" ECF No. 123 at 12. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind." *Lanard Toys Ltd. v. Anker Play Prods., LLC*, No. CV 19-4350-RSWL-AFMx, 2020 WL 6873647, at *7 (C.D. Cal. Nov. 12, 2020) (quoting *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069, 1077 (D. Or. 2013)). In his opposition brief, "Plaintiff does not oppose Defendants' motion to exclude Mr. Bercovici's Third Opinion regarding Defendant Wong and Defendant Solomon's state of mind or intent." ECF No. 133 at 4. Defendants' motion to exclude those opinions is therefore GRANTED.

**C. Opinions Regarding Probable Cause**

Defendants move to exclude Bercovici's fourth opinion, regarding probable cause, as consisting entirely of improper legal conclusions. ECF No. 123 at 14–15. In a footnote, Plaintiff makes clear that he does "does not oppose exclusion of Mr. Bercovici's Fourth Opinion that Plaintiff was arrested without sufficient probable cause." ECF No. 133 at 5 n.1. Defendants' motion to exclude Bercovici's fourth opinion is therefore GRANTED.

/ /

/ /

/ /

---

[8] The Ninth Circuit held that Judge Gonzalez Rogers erred in denying qualified immunity to a defendant officer, without addressing her treatment of Bercovici's opinion on negligence.

**IV. CONCLUSION**

Defendants' Motion to Exclude is GRANTED in part and DENIED in part, as discussed above.

**IT IS SO ORDERED.**

Dated: September 30, 2026

LISA J. CISNEROS
United States Magistrate Judge